All right, case number five is Frager against the Indianapolis Colts. Mr. Topic. Good morning again, Your Honor. Yes, good morning again. We're here on a motion to dismiss. Your review is de novo. At the time the Indianapolis Colts offered 2015 season tickets to the public, the team had also offered a secondary market for the purchase and sale of season ticket holder rights with an associated fee of 30 percent. Sell or transfer, right, but not renew? Well, the secondary market allows for the transfer of ownership of season ticket rights. Right. So that would have been, so if Mr. Frager, is it Mr. or Ms.? Mr. Mr. Frager had wanted to sell one of his 94 season ticket packages on this marketplace, he could have done so, provided he paid the 30 percent. Is the 30 percent fee on top? I mean, suppose he gets double the face value for the season tickets. Is the 30 percent calculated on that, or is it calculated on the face value? We're here on a motion to dismiss. My understanding, though, is that whatever price the buyer and seller agree to on the secondary market, 30 percent of that is also paid. I appreciate that. Okay, so my problem with your theory is trying to leverage from the 2015 season tickets over to the 2016 tickets, since the tickets say the Colts reserve the right dot dot dot to reject any renewal. And since the Colts have said we can decide not to renew, I don't know why you have a right to renew. Because at the same time, you have to interpret when there's a transfer of ownership provision in a secondary market for the transfer of ownership, ownership of what? The season tickets that you just bought. Why isn't that the straightforward thing, the 2015 tickets, coupled with the possibility, but not the right to renew? Well, so let me take each of those pieces. It's already the case that a season ticket holder can buy and sell tickets on an open market. So if we're talking about individual game tickets, no one would think that, oh, I should pay a 30 percent fee to buy and sell something that I can otherwise sell. As to the second point. Well, but you might. I mean, it depends what you can sell them for. People probably have reasons all the time, who are not brokers, to sell the rest of their season tickets. You know, maybe they're in financial difficulty and they'd like to get the money even with the 30 percent fee because of the markup on the secondary market, which can be quite considerable. Or maybe, you know, they're moving away from Indianapolis and they think, well, actually in reality, we're not going to fly from San Francisco back to Indianapolis for these Colts games. People have all kinds of reasons. So I think the exchange is a meaningful thing, no matter. Well, people can already do that using a service like StubHub. You can do StubHub, yeah. And there's no 30 percent fee to the team as a result of that. So our interpretation of it is that the secondary market is for the purpose of transferring something else. And the something else is a renewal right. But I don't see where you get that. I mean, I can certainly. This has been a big problem, not just for football, but for theater, for music. The development of these secondary markets has siphoned profit that the provider of the entertainment, whether it's a football team or somebody else, might have gotten if they had realized that was going to be the market price. They're all trying to pull this profit back in. So it seems to me the Colts have set up this STR marketplace and maybe for some reason think people will use it instead of StubHub or whatever. Well, we are getting far beyond a motion to dismiss that. I know it, but I'm just... For the motion to dismiss, my stumbling block is the language on the ticket that says, we didn't give you a property right to renew until the end of time Indianapolis Colts tickets. We can reject any renewal. But if the package of things that can be bought and sold on the secondary market are only individual game tickets and the right to request a renewal, then there really isn't transfer of ownership of anything. Well, sure there is. There's the tickets and the right to request the renewal. And I bet for single buyers, the Colts probably are delighted to renew a lot of the time. It's the brokers thereafter. Well, and that's the reason why somebody would go on a secondary market like this and pay a 30% fee in order to acquire season ticket holder status, as opposed to just buying all of those additional games. And so the problem that we're left with is that if you interpret the ownership provision the way the Colts propose, there really isn't anything that's owned and there really isn't anything for which they're enjoying the 30% fee, versus, yes, you have the provision that says they can reject a renewal. So what do you think that provision means? I mean, according to you, it means nothing. We actually can't reject any renewal. It means that the team drafted a contract with two different provisions that can't be reconciled with each other. And as the drafter under Indiana law, that contract has to be construed against them. Why would you reject the second part of the contract language instead of the first? I mean, when you have conflicting contractual language. The answer is because the Colts drafted the contract. And so under the doctrine that ambiguity is construed against the drafter, then the provision in favor of the ticket owner should prevail instead of the contrary provision that's in favor of the team. I don't see any ambiguity, but anyway, we'll take another look at it. I mean, you're just saying that it's likely not to be economically attractive, but I think lack of economic attractiveness isn't the same thing as ambiguity. Well, I think you have to look in one of the cases we cite, while it does involve a different set of circumstances, is you should look at commercial people in this setting. How would they interpret this? Why would anybody pay a 30% fee to simply acquire individual game tickets that they can already get without paying a 30% fee? Because when they buy the individual game tickets, they don't even have a shot at renewal. Whereas if it's just you buying a season ticket package for your family, and then you go to the Colts and say, gee, I really enjoyed going to the 2015 games, I'd like to renew, there's a possibility you can renew. You have something that's renewable. But according to the Colts, they can take that away at any time, and they can find new people. So I can always- So under your view, the renewal right lasts until when? 2100? I mean, forever? So it certainly lasts into the 2016 season. Whether the Colts can change- No, but your theory has no end to it. It could be 2050. So whether the Colts could change the terms for the 2016 season is a different question that's not- I don't understand why it's different at all, because they've already put in the right to reject any order of renewal. Well, if they got rid of the secondary market for the next season, for example, then there would be a different set of circumstances, and then how that would come out is, I don't know the answer to that question. But for the 2015 season, the ownership provision has to have some meaning, and under the Colts interpretation, it doesn't mean anything. I'll reserve the rest of my time. Mr. Barnard. So are people just idiots to use this STR marketplace and pay the 30% fee when they could just go out on StubHub or something? I'm sorry. I missed the first few words. Are people just fools to use this STR marketplace that the Colts have created with the fee when they could always just sell their existing tickets, whether season tickets or individual tickets, without that 30% fee? No, Your Honor, and may it please the Court, Tom Barnard for the Indianapolis Colts. One of the most important things I can do, I think, is explain this concept, which as Mr. Frager, counsel, indicated this morning is not really in the record, but is important for the Court's consideration. The STR marketplace, what it does, it's a secondary commercial market for the opportunity to put your name as a buyer on an account for tickets that you know where those tickets are going to be. Now, if I want to buy tickets and I want to take my family to the Colts game next year, I can stand in the queue and hope that I'm not too far up in the rafters, or I can look on this marketplace, and I can see, well, there's some tickets, there's some club seats, they're going to be more expensive. I put my name in. The important part, and the reason this is not part of the record, is because the Colts reserve the right to approve any transfer on the STR marketplace. There's three steps in the transfer of the STR marketplace. First, if I'm Mr. Frager and I want to transfer my tickets, I can put my name in an account on the STR marketplace, I list my tickets, I list a price. The Colts ticket office looks at that and they can decide whether or not they're going to approve that transfer. So why wouldn't a person such as Mr. Frager avoid that veto power of the Colts? Why wouldn't he just sell, I mean, the tickets that he already has are tickets for a particular seat in the stadium, I assume. Well because he, and I think it all gets down to what he bought. He bought tickets for the 2015 season. There was no economic exchange or bargain for anything beyond that. He didn't buy- And just to be clear, when we use the number 94, we're talking about 94 sets of season tickets? So 94 packages of whatever it is, 10 games apiece? Yes, Your Honor. Okay. I believe that's true. It's not just 94 games. Right. So what Mr. Frager had to sell was what he paid for. He can sell those, he can go on StubHub. What he doesn't have to sell is a perpetual right for those renewals. But you're saying there's no right to renewal because the Colts reserved the right to refuse renewal. That's right. So why are you calling it a right to renew when it isn't? Well the semantics, I think, are challenging in this case. Because you don't want to obfuscate? Well, the reality is if you purchase season tickets, your name is on an account. And the next year, if the Colts decide to renew, you apply for renewal. If the Colts do not exercise that right, you will get those tickets. Now it's true. The majority of season ticket holders are going to have the right to renew. So it is an- Well they're going to have their request to renew granted is what you really want to say. Yes, I'm sorry. Yes, a request granted. But it's not a property right that gives rise to a tort claim, to a tortious conversion claim. And there's an economic sense for this market to exist because, let's say you have tickets that are in a desirable location, and you can no longer attend the Colts games, rather than just turn them in, there may be some value to having your name on that account. And it's the name on that account that is subject to the marketplace. That's what's given- That's, I believe, is the basis for Mr. Topic's argument this morning. Now I should point out that the district court, before he dismissed, before Judge Lawrence dismissed, he granted 14 days for an amended complaint to be filed. Had there been a concern that the STR marketplace was not adequately identified in the complaint, that could have been done. Well, one of the reasons that Mr. Topic did not file an amended complaint, I think one of the reasons might be that if you look at the language on that website, it says in clear terms that the Colts reserve the right to any transfer of tickets. So, and that this is not a personal seat license. So it's clear on that website that the Colts have not created a right that does not exist. And I think we all understand that a seller can sell nothing more than he or she has, and the existence of this marketplace does not create rights that Mr. Frager did not have in those 94 tickets. I'm happy to answer any questions, if not, I will sit down. I see none, so thank you very much. Anything further, Mr. Topic? Just briefly, as my colleague acknowledged, the semantics are challenging, and the reason for that is because the Colts created a system where on the one hand, they wanted to try to capitalize on the possibility of renewal, and portray it on the one hand as just a possibility when it suits them. So they want people to pay for the expectation that they're going to be renewed, but at the same time, not actually grant that. And so we're left with two provisions that are ambiguous, and I think the clearest way to resolve this case is the doctrine that the ambiguity is their fault for drafting the particular arrangement in that manner. All right, thank you very much. Thanks to both counsel. We'll take the case under advising, and the court will take a brief recess.